**Donald V. ALEXANDER and Erma A. Alexander, Individually, and as the Natural Parents and Next of Kin of Jeffrey Alexander, Deceased, Plaintiffs,**

v.

**BEALE STREET BLUES COMPANY, INC. a/k/a B.B. King's Blues Club, Inc. d/b/a B.B. King's Blues Club, et al., City of Memphis, Tennessee, Memphis Police Department, Mike Jones, Robert Whipple and Jack Does I–X, Defendants.**

**No. 98–2715–TUV.**

United States District Court,
W.D. Tennessee,
Western Division.

March 19, 1999.

938

R. Sadler Bailey, Jr., Bailey & Clarke, Memphis, TN, for David V. Alexander, Erma A. Alexander, Jeffrey Alexander, plaintiffs.

William F. Burns, Waring Cox, Louis F. Allen, Robert B.C. Hale, Memphis, TN, for Beale Street Blues Company, Inc. aka B.B. King's Blues Club, Inc. dba B.B. King's Blues Club, John Lawrence Ferguson, Richard Leachman, Solomon McDaniel, James Everett Bowen, Chad Rowan, Rodney Dunn, Barry Myers, John Does I–X, defendants.

ORDER ON JONES', WHIPPLE'S, CITY OF MEMPHIS' AND MEMPHIS POLICE DEPARTMENT'S MOTIONS TO DISMISS, THE B.B. KING'S DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND PLAINTIFFS' MOTION TO DELAY CONSIDERATION

TURNER, District Judge.

Plaintiffs Donald and Erma Alexander are the parents of Jeffrey Alexander, who died in July 1997. Plaintiffs allege that all the named defendants caused or contributed to their son's death and are liable under various theories of state and federal law. Presently before the court are motions to dismiss or, in the alternative, for summary judgment filed by officers Mike Jones and Robert Whipple, a motion to dismiss filed by the Memphis Police Department and the City of Memphis, a motion for partial summary judgment filed by the Beale Street Blues Company, Inc. and several of its agents (hereinafter referred to as "the BB King's defendants"), and a motion to delay consideration of Jones' and Whipple's motions.

## I. Standard of Review

When considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, all factual allegations of the plaintiff are to be believed and the claim must not be dismissed unless it appears that the plaintiff can prove no set of facts in support of his allegations which would entitle him to relief. *Gazette v. City of Pontiac,* 41 F.3d 1061, 1064 (6th Cir.1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

## II. Factual Background

The following factual allegations are set forth in plaintiffs' Amended Complaint and are taken as true for purposes of this order. On July 19, 1997, Jeffrey Alexander went to BB King's nightclub with a group of co-workers. During the evening, Alexander and an unidentified third-party got into an altercation.

BB King's employees responded to the altercation, but it had subsided by the time they arrived. Nevertheless, the BB King's employees ordered Alexander and his party to leave the club. The BB King's employees began to escort Alexander out of the club, but Alexander requested permis-

sion to retrieve his belongings from the table where he had been sitting.

As Alexander moved to retrieve his belongings, the BB King's employees suddenly and without warning or provocation threw him to the floor. Alexander was then forced to the prone position, with his chest to the floor. Several of the BB King's employees then held Alexander down with their body weight, and continued to do so despite Alexander's lack of resistance or motion. Several club patrons expressed their concern that Alexander could not breathe, but their pleas were ignored. The BB King's employees remained on top of Alexander for approximately ten to fifteen minutes, and their weight ultimately caused his death by traumatic asphyxia.

As a result of the incident, Memphis police were summoned to the scene. Officers Mike Jones and Robert Whipple responded to the call. Once they arrived, it was obvious that Alexander's medical condition had deteriorated and that he was in need of medical attention. Despite his obvious need for medical attention, the officers assisted the BB King's employees in handcuffing Alexander. After cuffing Alexander, the officers and BB King's employees carried Alexander's motionless body outside of the club and placed him behind a police cruiser in a contorted position, placing Alexander at grave risk of death by positional asphyxiation. The officers failed to provide Alexander with time- ly medical treatment, and delayed in summoning medical personnel.

Alexander was taken to the hospital by ambulance, where he later died as a result of traumatic asphyxia.

### III. Legal Posturing

Plaintiffs originally filed suit in state court against Beale Street Blues Company, Inc. a/k/a BB King's Blues Club, Inc. d/b/a BB King's Blues Club and several of its employees alleging various state law claims. In their answer, the BB King's defendants set forth the affirmative defense of comparative fault, alleging that agents of the Memphis Police Department, including Jones and Whipple, either caused or contributed to Alexander's death.[1] Based on the allegations of fault made by the BB King's defendants against the Police Department, Jones, and Whipple, plaintiffs amended their complaint to add those parties and the City of Memphis as defendants (hereinafter referred to as "the Memphis defendants"), and asserted various claims against them, including state law claims and claims brought under 42 U.S.C. § 1983. The action was then removed to this court, which has original jurisdiction under 28 U.S.C. §§ 1331 and 1343.

Jones and Whipple filed motions to dismiss or, in the alternative, for summary judgment, and the City and Memphis Police Department filed a motion to dismiss.[2] The BB King's defendants also filed a motion for partial summary judgment, which raised only legal issues.[3] Plaintiffs

---

**1.** The BB King's defendants' fourth defense states, in pertinent part:

> If Plaintiffs or their decedent received any injuries or incurred any damages or losses as a result of the incident described in the Complaint, such injuries, damages or losses were directly and proximately caused by the fault of persons or entities other than these Defendants, including, but not limited to the actions of those with whom Plaintiffs' decedent fought and the actions or in actions [sic] of employees and agents of the Memphis Police Department ... and that portion of fault attributable to other parties or non-parties should reduce or bar Plain-

tiffs' recovery for damages or losses, if any, against [the BB King's] Defendants.

**2.** Although Jones and Whipple filed separate motions to dismiss or, in the alternative, for summary judgment, Jones relies entirely on the law and argument contained in Whipple's earlier filed motion. The court will therefore consider both motions together.

**3.** Although the court advised the parties at oral argument that it would not rule on the BB King's defendants' motion until after discovery had been completed and it had ruled on the Memphis defendants' motions, the court has subsequently determined that the

have responded to all of the above mentioned motions.[4]

On September 16, 1998, the court entered an order ruling that the officers' motions would be treated solely as motions to dismiss with respect to the issue of qualified immunity, and staying discovery until those motions had been decided. There are several other legal issues raised in the officers' motions, and the court finds it appropriate to rule on those issues at this time. To the extent the officers' motions raise issues not addressed in this order, the court finds those issues would be more appropriately resolved after discovery has been completed as motions for summary judgment. Thus, to the extent the officers' motions raise issues not decided by this order, those motions are denied without prejudice.[5]

### IV. *Officers Jones and Whipple*

Plaintiffs' Amended Complaint sets forth three causes of action against Officers Jones and Whipple. First, plaintiffs claim Jones and Whipple are liable under 42 U.S.C. § 1983 for violations of Alexander's Fourth and Fourteenth Amendment rights. Second, plaintiffs claim Jones and Whipple are liable for violations of Alexander's rights under the Tennessee Constitution. Third, plaintiffs claim Jones and Whipple are liable under various state tort theories.

### A. *Plaintiffs' § 1983 Claims*

The Amended Complaint alleges that the officers' actions deprived Alexander of several rights guaranteed him by the Fourth and Fourteenth Amendments, including: a) his right to receive medical attention; b) his right to be free from unlawful arrest; c) his right to be free from the use of unreasonable unjustified and excessive force; d) his right to be free from unreasonable seizure of his person; e) his right to be free from deprivation of property without due process of law; and f) his right to be free from arbitrary and conscious-shocking behavior.

Upon its own initiative and under the authority of Rule 12(f) of the Federal Rules of Civil Procedure, the court finds that several of plaintiffs' federal constitutional allegations against the officers should be stricken as being redundant or immaterial. First, the court finds that there is no substantive difference between plaintiffs' claim for unreasonable seizure and claim for unlawful arrest. Both claims arise under the Fourth Amendment which secures individuals' rights to be free from unreasonable seizure. Accordingly, the court will treat plaintiffs' claims for unlawful arrest and unreasonable seizure as a single claim.

■ The court also finds that all of plaintiffs' allegations arising under the Fourteenth Amendment should be stricken as being immaterial. All of plaintiffs' allegations share the common nucleus that they are based on the officers' alleged conduct in seizing Alexander and their failure to provide medical attention during the seizure. Such claims are more appropriately analyzed under the reasonableness standard of the Fourth Amendment rather than under a substantive due process ap-

BB King's defendants' motion involves only questions of law which were also raised in the Memphis defendants' motions. Accordingly, the court finds it appropriate to rule on the purely legal issues raised in the BB King's defendants' motion simultaneously with its ruling on the Memphis defendants' motions.

4. The BB King's defendants also filed responses to the Memphis defendants' motions, but plaintiffs contest the BB King's defendants' legal right to present evidence in opposition to those motions, and the Memphis defendants contest whether the BB King's

defendants have standing to oppose their motions. The court need not address these issues at this time since all motions currently under consideration involve only questions of law.

5. Plaintiffs have filed a motion to stay consideration of the officers' motions for summary judgment, and the court's treatment of the officers' motions as motions to dismiss moots plaintiffs' motion. Thus, plaintiffs' motion to stay consideration is denied.

proach. *Estate of Phillips v. City of Milwaukee,* 123 F.3d 586, 595–96 (7th Cir. 1997), *cert. denied,* 522 U.S. 1116, 118 S.Ct. 1052, 140 L.Ed.2d 115 (1998); *Guseman by Guseman v. Martinez,* 1 F.Supp.2d 1240, 1259–60 (D.Kan.1998). *See also County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 1714, 140 L.Ed.2d 1043 (1998) (finding substantive due process claims are inappropriate where other specific textual guarantees exist in the Bill of Rights that cover plaintiff's situation). *Cf. Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ("[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."). Accordingly, plaintiffs' due process and arbitrary and conscious-shocking claims are stricken as being immaterial. Plaintiffs' medical indifference claim will be examined under the framework of the Fourth Amendment to determine whether the officers' alleged denial of medical care was reasonable under the circumstances. *See Estate of Phillips,* 123 F.3d at 596.

■ The court will now turn its attention to the sufficiency of the allegations of plaintiffs' remaining two claims: whether the officers' seizure or arrest of Alexander was unreasonable or unlawful and whether the force used in making that seizure was excessive.[6] The court will also examine whether these defendants are entitled to qualified immunity on those claims.

### 1. *Reasonableness of the Seizure*

To succeed on their Fourth Amendment unreasonable seizure/unlawful arrest claim, plaintiffs must show that there was a seizure and that it was unreasonable. *Brower v. County of Inyo,* 489 U.S. 593, 599, 109 S.Ct. 1378, 103 L.Ed.2d 628

(1989). The officers assert that plaintiffs cannot meet this burden because the officers never arrested Alexander and instead only took him into custody pursuant to Tennessee law. The court finds the officers have failed to establish that they are entitled to judgment as a matter of law.

The officers argue that at no time did they arrest or charge Alexander with any crime, and that they therefore cannot be liable for false arrest under the Fourth Amendment. The officers' argument misses the mark. The Fourth Amendment protects the "right of the people to be secure in their persons ... against unreasonable ... seizures."

> It is quite plain that the Fourth Amendment governs "seizures" of the person which do not eventuate in a trip to the station house and prosecution for crime—"arrests" in traditional terminology. It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that person.

*Terry v. Ohio,* 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *See also California v. Hodari D.,* 499 U.S. 621, 624–25, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (defining cognizable Fourth Amendment seizure claim to include the mere grasping or application of physical force with lawful authority); *Brower,* 489 U.S. at 596–97, 109 S.Ct. 1378 (finding Fourth Amendment seizure occurs when there is a governmental termination of freedom of movement through means intentionally applied); *Tennessee v. Garner,* 471 U.S. 1, 7, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

■ Plaintiffs alleged that the officers assisted the BB King's employees in handcuffing Alexander and carrying him out of the bar. The court finds that plaintiffs' allegations, if true, suffice as a matter of law to show that the officers seized Alexander.

---

**6.** It is clear that a plaintiff may sue under 42 U.S.C. § 1983 for both an unlawful seizure and for excessive force used in making the unlawful seizure. *See, e.g., Adams v. Metiva,* 31 F.3d 375, 386–87 (6th Cir.1994).

The court must then determine whether plaintiffs' allegations concerning the officers' seizure of Alexander paint that seizure as being unreasonable under the Fourth Amendment. In an unreasonable seizure/unlawful arrest claim, a court looks to whether the officers had probable cause to arrest/seize the defendant. *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir.1995).

> Probable cause to make an arrest exists if the facts and circumstances within the arresting officer's knowledge were sufficient to warrant a prudent man in believing that the arrestee had committed or was committing an offense. In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible.

*Id.* (internal citations, quotations, and alterations omitted). The officers argue that they never observed Alexander commit any offense, misdemeanor or felony which might have given them the probable cause necessary to seize his person. Instead, the officers argue that the BB King's employees made a citizen's arrest of Alexander prior to the officers' arrival, and that the officers merely took custody of Alexander as required by Tennessee Code Annotated § 40–7–113.[7]

The court finds that the officers' argument that they merely took custody of Alexander pursuant to state law is insufficient to grant their motion to dismiss. To begin with, the BB King's defendants dispute whether they made a citizen's arrest of Alexander, and that issue of fact is not ripe for determination here.[8] Moreover, even if the BB King's defendants had made a citizen's arrest, the officers taking custody of Alexander must still be judged by the constitutional reasonableness standard. It is conceivable that a situation could arise where it would be unreasonable for an officer to take custody of a citizen merely because another citizen claimed he had made a citizen's arrest. Furthermore, authorization under a state statute to take certain action does not necessarily preclude an action for violation of federal constitutional rights. The scope of federal constitutional rights is not defined by state law. *See, e.g., Garner*, 471 U.S. at 7–22, 105 S.Ct. 1694 (finding city may be liable even though officer shot suspect pursuant to Tennessee statute authorizing the use of all necessary means to effect an arrest).

Although it may be determined that the officers had good reason to handcuff and seize Alexander, that good reason cannot be garnered from the face of plaintiffs' complaint. Accordingly, the court denies the officers' motions to dismiss the unreasonable seizure claim on the merits.

### 2. *The Force Used*

Plaintiffs also allege that the officers' positioning of Alexander and their denial of medical care violated Alexander's right to be free from unreasonable, unjustified and excessive force. Claims that law enforcement officials have used excessive force in the course of an arrest or seizure of a person are to be analyzed under the Fourth Amendment's objective reasonableness standard. *Graham*, 490 U.S. at 395, 109 S.Ct. 1865.

---

**7.** Tennessee Code Annotated § 40–7–113 provides:

> (a) A private person who has arrested another for a public offense shall, without unnecessary delay, take the arrested person before a magistrate or deliver the arrested person to an officer.
>
> (b) An officer may take before a magistrate, without a warrant, any person who, being engaged in the commission of a public offense, is arrested by a bystander and delivered to the officer, and anyone arrest-ed by a private person as provided in §§ 40–7–109—40–7–112, and delivered to the officer.

**8.** Tennessee Code Annotated § 40–7–111 requires a private person making an arrest to inform the person arrested of the cause thereof, unless the person is in the actual commission of the offense. At the very least, the court would have to determine whether this statute had been complied with to determine whether a valid citizen's arrest was made.

Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.... [T]he test of reasonableness ... requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.... Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

*Id.* at 396–97, 109 S.Ct. 1865 (internal quotations and citations omitted).

The officers argue that the only contact they had with Alexander was "handcuffing him, moving him so that he was better able to breathe, and performing CPR on him." The officers assert that such contact was not excessive, and that the excessive force claim should therefore be dismissed.

■ A careful reading of the Amended Complaint reveals that plaintiffs do not assert that the officers physically abused Alexander. Instead, plaintiffs allege that the officers' physical positioning of Alexander placed him in grave danger of death by positional asphyxia, which constituted excessive force. Plaintiffs further allege that the officers' handcuffing of Alexander instead of providing obviously needed medical care also constituted excessive force.

Taking all the allegations in the Amended Complaint as true, the court cannot find as a matter of law that plaintiffs could prove no set of facts in support of their allegations which would paint the officers' conduct as being objectively unreasonable.[9] Accordingly, the officers' motions to dismiss the merits of plaintiffs' excessive force claim are denied.

### 3. *Qualified Immunity*

Jones and Whipple argue that they are entitled to qualified immunity notwithstanding the court's determination regarding the merits of plaintiffs' Fourth Amendment claims.

The Supreme Court has held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

---

9. Several issues of fact need to be resolved before a determination on reasonableness can be made. For instance, when would a reasonable officer have first known Alexander required medical assistance? How long did the officers wait before providing that assistance and calling for medical personnel? Were the officers' actions within the realm of common police practice? Were the officers aware that their positioning of Alexander could cause death by positional asphyxia?

*Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Court has expanded on this holding and has made it clear that qualified immunity involves a two part inquiry: a court must determine whether the right at issue was clearly established and whether a reasonable official would understand that what he is doing violates that right. *See Anderson v. Creighton,* 483 U.S. 635, 638–40, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

The Sixth Circuit has established a framework for determining what constitutes a clearly established constitutional right.

> Our review of the Supreme Court's decisions and of our own precedent leads us to conclude that, in the ordinary instance, to find a clearly established constitutional right, a district court must find binding precedent by the Supreme Court, its court of appeals or itself. In an extraordinary case, it may be possible for the decisions of other courts to clearly establish a principle of law. For the decisions of other courts to provide such "clearly established law," these decisions must both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting. Here a mere handful of decisions of other circuit and district courts, which are admittedly novel, cannot form the basis for a clearly established constitutional right in this circuit.

*Ohio Civil Service Employees Ass'n v. Seiter,* 858 F.2d 1171, 1177–78 (6th Cir. 1988).

### a. Unreasonable Seizure

The right to be free from unlawful arrests or unreasonable seizures is a clearly established constitutional right. *Hodari D.,* 499 U.S. at 624, 111 S.Ct. 1547. Thus, the officers' ability to invoke the qualified immunity doctrine turns on whether an objectively reasonable official in their position would have known, under the circumstances, that the seizure was unlawful. The court finds that an objectively reasonable officer would have known that seizing a citizen without cause would violate that citizen's constitutional rights. Accordingly, the officers' motion to dismiss this claim based on qualified immunity is denied.

### b. Excessive Force

Although the right to be free from excessive force during a police seizure is well settled, *Graham,* 490 U.S. at 394–96, 109 S.Ct. 1865, this case does not involve traditional notions of excessive force. There were no allegations of physical brutality. Thus, the court must determine both what particularized rights are in question and whether those rights were clearly established. *See Anderson,* 483 U.S. at 639–40, 107 S.Ct. 3034.

Plaintiffs allege that the officers were unreasonable in their failure to respond to Alexander's medical needs. The court finds that the right in question is an arrestee's right to medical attention, and that Alexander's right to medical attention, once the officers took custody of him, was a clearly established constitutional right. *See DeShaney v. Winnebago County Dept. of Soc. Servs.,* 489 U.S. 189, 198–200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989); *Bell v. Wolfish,* 441 U.S. 520, 545, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).[10]

---

**10.** Although the right to medical care will most often be cited in the context of the Eighth or Fourteenth Amendments, in this case the court must determine whether the officers' conduct with respect to medical care was objectively reasonable under the Fourth Amendment. That is not to say, however, that because the court is analyzing the right to medical care in the context of the Fourth Amendment that the right was not clearly established. *See Spurlock v. Satterfield,* 167 F.3d 995, 1006 n. 19 (6th Cir.1999) (finding that circuit's previous analysis of right to be free from malicious prosecution under Four-

Plaintiffs also allege that the officers were unreasonable in their positioning of Alexander after they took custody of him. Courts facing similar factual situations have come to different conclusions regarding what particularized right is in question. *Compare Martinez,* 1 F.Supp.2d at 1258–59 (finding particularized right in question is the right to be free from a specific type of restraint) *with Gutierrez v. City of San Antonio,* 139 F.3d 441, 445–46 (5th Cir.1998) (refusing to focus on whether there was a clearly established right against a particular type of restraint and instead looking to whether objectively reasonable officers would have known that the restraint constituted deadly force). The court agrees with the Fifth Circuit's analysis in *Gutierrez* of the particularized right in question. While there may be no particularized right against being handcuffed while unconscious and being placed in a contorted position in the street, there is a particularized right to be free from deadly force, and that right is clearly established. *See Garner,* 471 U.S. at 11, 105 S.Ct. 1694. If a reasonable Memphis police officer, through training or otherwise, would know that defendants' positioning of Alexander carried with it "a substantial risk of causing death or serious bodily harm," *Robinette v. Barnes,* 854 F.2d 909, 912 (6th Cir.1988), defendants' conduct would have violated a clearly established constitutional right.

Having determined the rights in question were clearly established, the court must determine whether the officers' conduct, in light of those rights, was objectively reasonable. As discussed above when this order addressed the objective reasonableness of the officers' action on the merits of the claims, the court cannot determine that the officers' conduct was objectively reasonable as a matter of law. Accordingly, the officers' are not entitled

to qualified immunity at this juncture on plaintiffs' Fourth Amendment claims.

### B. *Claims Under the Tennessee Constitution*

Plaintiffs make several claims against the officers based on the alleged deprivation of Alexander's rights under the Tennessee Constitution. Although the Tennessee Supreme Court has never decided whether a private individual can bring a cause of action under the Tennessee Constitution, the Sixth Circuit has adopted the position of a Tennessee Court of Appeals which held that such an action may not be maintained. *Cline v. Rogers,* 87 F.3d 176, 179–80 (6th Cir.1996) (quoting *Lee v. Ladd,* 834 S.W.2d 323, 325 (Tenn.Ct. App.1992)). Furthermore, plaintiffs may not use 42 U.S.C. § 1983 to assert rights arising under state constitutions. *Huron Valley Hosp., Inc. v. City of Pontiac,* 887 F.2d 710, 714 (6th Cir.1989). Accordingly, plaintiffs' claims arising under the Tennessee Constitution are dismissed.

### C. *State Tort Claims*

Plaintiffs allege that the officers' conduct resulted in several torts being committed against Alexander, including trespass to the person, assault and battery, intentional infliction of emotional distress, outrageous conduct, and the failure to provide medical attention. The officers assert that the first four of plaintiffs' state tort claims are baseless, and that in any event they are entitled to immunity.[11]

#### 1. *Trespass to the Person and Assault and Battery*

"An assault is an attempt, or the unequivocal appearance of an attempt, to do a corporal injury to another, the intent to do harm being essential." *Rushing v. State,* 196 Tenn. 515, 268 S.W.2d

teenth Amendment did not preclude a finding that the right was clearly established when analyzed under the Fourth Amendment).

11. The officers never address plaintiffs' state tort claim that the officers' conduct constituted a failure to provide medical attention. Thus, the court need not decide whether such a claim exists under Tennessee law.

563, 567 (1954) (citations and quotations omitted). "A battery is any unlawful beating, or other wrongful physical violence or constraint, inflicted on a human being without his consent." *Id.* (citations and quotations omitted).

Assault and battery are a type of trespass to the person. *See Kite v. Hamblen,* 192 Tenn. 643, 241 S.W.2d 601, 602–03 (1951); *Byrd v. Bullion,* 148 Tenn. 496, 256 S.W. 245, 245 (1923). Trespass is an intentional tort which requires a voluntary act. *Kite,* 241 S.W.2d at 603.

> In the sense of a trespass to the person, the word "trespass" involves the idea of force, or the direct character of an injury, remediable at common law by the action of trespass vi et armis, and not the idea of injuries which are consequential, resulting, for instance, from negligence or nonfeasance, and remediable by the old action of trespass on the case.

*Id.*

Under the circumstances of this case, the court believes any action that could be maintained for a trespass to the person involves the same common law elements as assault and battery. Thus, the court will examine only plaintiffs' assault and battery claim.

Defendants assert that they cannot be liable for assault and battery because they were lawfully acting pursuant to the Tennessee citizen's arrest statute in taking custody of Alexander. As discussed above in the context of plaintiffs' § 1983 claims against the officers, it is not clear from the record whether the BB King's defendants had made a citizen's arrest. Even if such an arrest had been made, the court does not see how that precludes a finding that the officers committed assault and battery if the elements of those torts are met. In other words, although the officers may have taken custody of Alexander pursuant to the citizen's arrest statute, that grant of authority does not absolve them of their responsibility not to commit a tort on the citizen in their custody. Although that grant of authority may make certain conduct lawful that would otherwise be a tort, it does not make all conduct, no matter how unreasonable, lawful. The officers also claim they cannot be liable for these torts because their contact with Alexander only involved briefly restraining him with handcuffs and there was no intent to injure him. While that may be true, that determination is not appropriately made on a motion to dismiss.

### 2. Intentional Infliction of Emotional Distress and Outrageous Conduct

Intentional infliction of emotional distress and outrageous conduct are different names for the same tort. *Bain v. Wells,* 936 S.W.2d 618, 622 n. 3 (Tenn. 1997). "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Id.* "[T]here are three essential elements to a cause of action: (1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury."

The officers' argue that this claim must be dismissed because liability only exists where conduct is atrocious and utterly intolerable in a civilized society. Taking all the plaintiffs' factual allegations as true, the court cannot find as a matter of law that plaintiffs can prove no set of facts in support of their allegations that would paint the officers' conduct as being "atrocious and utterly intolerable." Accordingly, the officers' motion to dismiss this claim is denied.

### 3. Immunity

The officers argue that they are entitled to common law immunity notwithstanding their potential liability on the merits of the state tort claims. The offi-

cers' argument is without merit. The common law immunity extended to law enforcement officers for performing their discretionary functions essentially involves a defense of good faith and probable cause. *Youngblood v. Clepper*, 856 S.W.2d 405, 406–08 (Tenn.Ct.App.1993). Taking all the plaintiffs' allegations as true, the court cannot find as a matter of law that plaintiffs can prove no set of facts in support of their allegations which would paint the officers' conduct as being in good faith and with probable cause. Accordingly, the officers' motion to dismiss the state tort claims based on common law immunity is denied.

### V. *The Memphis Police Department*

■ The Amended Complaint sets forth several claims against the Memphis Police Department, which the complaint refers to as a division of the City of Memphis. The Memphis defendants assert that as a division of a municipal corporation, the Memphis Police Department does not have the capacity to sue or be sued. Neither plaintiffs nor the BB King's defendants dispute this. The Memphis defendants' motion to dismiss the Memphis Police Department is well taken, as the City of Memphis represents the real party in interest. *See* Fed.R.Civ.P. 17. Accordingly, the Memphis Police Department is dismissed as a defendant from this action.

### VI. *City of Memphis*

The Amended Complaint sets forth three causes of action against the City of Memphis. First, plaintiffs claim the City is liable for the negligence of the police officers on a respondeat superior theory of liability. Second, plaintiffs claim the City is liable under 42 U.S.C. § 1983 for violations to Alexander's Fourth and Fourteenth Amendment rights. Third, plaintiffs claim the City is liable for violations to Alexander's rights under the Tennessee Constitution.

### A. *Negligence Claim*

Count III of the Amended Complaint sets forth a negligence claim against the City. Plaintiffs assert that once Memphis police officers took Alexander into custody, they were under a duty of care to provide for his well-being. Plaintiffs further assert that the officers breached this duty in several ways, and that such breaches directly and proximately caused Alexander's death, for which the City is liable.[12]

The City attacks plaintiffs' negligence claim on two grounds. First, the City asserts that plaintiffs' Amended Complaint was inadequately pled under Federal Rule of Civil Procedure 8(a). Second, the City asserts that even if the pleadings were adequate, Tennessee has not removed its immunity to suit for the conduct at issue.

■ Federal Rule of Civil Procedure 8(a) provides, in relevant part:

A pleading which sets forth a claim for relief ... shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and

---

12. Plaintiffs assert that the officers breached their duty of care in the following ways:

A) By handcuffing and restraining Alexander when it was obvious that he was in need of medical attention;

B) By placing Alexander outside on the curb in a contorted position which placed him at risk of death from positional asphyxia;

C) By placing Alexander at the rear of the police vehicle which placed him at risk of death from inhalation of exhaust fumes;

D) By failing to provide Alexander with timely medical treatment;

E) By failing to summon medical personnel in a timely manner to tend to Alexander's obvious and serious medical needs;

F) By failing to provide Alexander with CPR when his condition deteriorated; and

G) By failing to use that degree of care required under the circumstances then and there existing.

(3) a demand for judgment for the relief the pleader seeks.

The City asserts that plaintiffs must plead compliance with the Tennessee Government Tort Liability Act ("GTLA"), Tenn. Code. Ann. §§ 29–20–201 *et seq.*, to establish jurisdiction and thus comply with the federal pleading requirement. More specifically, the City argues that plaintiffs' negligence claim requires plaintiffs to affirmatively plead the City's waiver of its immunity as a jurisdictional requirement. The City's argument is well taken. In *City of Lavergne v. Southern Silver, Inc.*, 872 S.W.2d 687, 690–91 (Tenn.Ct.App. 1993), the court held that the sovereign immunity provided for by the GTLA is a jurisdictional prerequisite rather than an affirmative defense that can be waived if not pled. This court has no reason to believe that the Tennessee Supreme Court would find otherwise if confronted with the question. The court therefore finds that in order to bring a negligence claim against the City, plaintiffs were required to plead compliance with the GTLA in order to satisfy Federal Rule of Civil Procedure 8(a). However, under the authority of Federal Rule of Civil Procedure 15, the court grants plaintiffs leave to amend their complaint within ten days of the entry of this order to comply with the jurisdictional pleading requirement.

Assuming plaintiffs take advantage of the leave to amend granted by the court, the court will address the City's other argument pertaining to the legal sufficiency of the negligence claim. Defendants assert that even if the pleadings were adequate under Federal Rule of Civil Procedure 8, they are still entitled to judgment as a matter of law because Tennessee has not removed the City's immunity from suit for the underlying conduct.

█ Tennessee has removed governmental immunity from suit for injuries "proximately caused by a negligent act or omission of any employee within the scope of his employment." Tenn.Code Ann. § 29–20–205. There are exceptions to re-

moval, however, which include situations where the injury "[a]rises out of ... false arrest, ... intentional trespass, ... infliction of mental anguish, ... or civil rights." Tenn.Code Ann. § 29–20–205(2). As discussed earlier in this order, one count of the Amended Complaint asserts that the officers are liable for, among other things, intentional trespass to Alexander's person and intentional infliction of emotional distress. Another count asserts the officers are liable under 42 U.S.C. § 1983 for violations of Alexander's civil rights. The City asserts that since the essence of the Amended Complaint lies in intentional tort and civil rights violations, the exception to waiver of immunity applies. In support, the City cites *Potter v. City of Chattanooga*, 556 S.W.2d 543 (Tenn.1977). In *Potter*, the court held that the exception to the immunity waiver applied where the gravamen of the complaint lay in false arrest and assault and battery, even though the amended complaint also asserted a negligence claim. *Id.* at 545. *Potter*, however, involved allegations of physical abuse by a police officer against the plaintiff, and for that reason the court finds it inapplicable. Here, plaintiffs have alternatively pled civil rights violations against both the officers and the City. Plaintiffs have also pled intentional tort claims against the officers and a negligence claim against the City. Unlike *Potter*, it is unclear at this juncture on which basis liability might be found. The court therefore finds that plaintiffs' alternatively pleading civil rights violations and intentional tort claims against the officers does not automatically invoke the exception to the waiver of immunity on the negligence claim against the City. *See McKenna v. City of Memphis*, 544 F.Supp. 415, 419 (W.D.Tenn.1982) (finding GTLA only restores "immunity for civil rights claims as such, not those for negligence as a matter of common law"), *aff'd*, 785 F.2d 560 (6th Cir.1986). To hold otherwise would preclude plaintiffs from bringing both a civil rights action and a negligence action against a Tennessee municipality.

The court is aware of no case that has interpreted the GTLA in such a manner. *But see Ezell v. Cockrell,* 902 S.W.2d 394 (Tenn.1995) (analyzing both a negligence and § 1983 claim brought against a municipality). Accordingly, the City's motion to dismiss is denied, assuming plaintiffs amend their Amended Complaint to conform with the pleading requirements set forth earlier in this order.

### B. *Section 1983 Claims*

Count IV of the Amended Complaint asserts that the City is liable under 42 U.S.C. § 1983 for Alexander's death. Initially, plaintiffs assert that the officers, while acting under the color of state law, violated Alexander's Fourth and Fourteenth Amendment rights. Plaintiffs then assert that the officers' conduct and Alexander's subsequent death were proximately caused by any one of ten alleged City policies of inaction. The City argues that the § 1983 claim must be dismissed for failure to state a claim upon which relief can be granted.

■■■■ A municipality cannot be held liable for an injury caused by its agents or employees under § 1983 based on a theory of respondeat superior. *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Instead, a municipality may only be liable for a constitutional tort where the action occurred pursuant to an official municipal policy. *Id.* In order to hold the municipality liable, the municipal policy must be the "moving force" behind the constitutional violation. *City of Canton v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Either an affirmative policy or a policy of inaction can suffice to support municipal liability. *See Doe v. Claiborne County,* 103 F.3d 495, 508 (6th Cir.1996). Under the liberal pleading requirements of the federal rules, all a plaintiff need do to set forth a cognizable § 1983 claim against a municipality, then, is allege that agents of the municipality, while acting under color of state law, violated the plaintiff's con-

stitutional rights, and that a municipal policy or policy of inaction was the moving force behind the violation. No further factual specificity is required at the initial pleading stage. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 167–69, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

■■■■ The court finds that the Amended Complaint sufficiently sets forth a § 1983 claim upon which relief could be granted against the City. The Amended Complaint alleges that agents of the City, while acting under color of state law, violated Alexander's constitutional rights. Earlier in this order, the court held that plaintiffs' constitutional tort claims against the officers might have merit, and denied the officers' motion to dismiss on that ground. Plaintiffs then set forth ten alleged City policies of inaction that plaintiffs allege proximately caused Alexander's death. Nothing else is required at this juncture.

■■■■ Plaintiffs also allege that the City should be liable since it ratified the officers' conduct when it failed to reprimand, discipline or terminate the officers involved. The City argues that this claim should be dismissed because subsequent ratification could not have caused Alexander's death. The City's argument is well taken. Even if plaintiffs could prove that the City ratified the officers' conduct by failing to discipline them for it, plaintiffs would still have to prove that the ratification was a "moving force" behind the constitutional violation. *Feliciano v. City of Cleveland,* 988 F.2d 649, 656 n. 6 (6th Cir.1993). The court finds that under the circumstances of this case, plaintiffs could not establish that ratification of the officers' conduct was the "moving force" behind the alleged constitutional violation. Although ratification might tend to establish the existence of a policy of acquiescence that in itself was a "moving force," mere ratification of the conduct at issue by itself cannot legally suffice as a "moving force."

Accordingly, the City's motion to dismiss plaintiffs' ratification claim is granted, but the motion to dismiss plaintiffs' claims that the officers' conduct occurred pursuant to a municipal policy is denied.

### C. Claims Under the Tennessee Constitution

Earlier in this order, the court dismissed plaintiffs' claims arising under the Tennessee Constitution against Officers Jones and Whipple. For the reasons stated there, plaintiffs' claims in Count IV arising under the Tennessee Constitution against the City are also dismissed.

### VII. Damages

### A. Hedonic Damages

■■■ All defendants assert that plaintiffs' demand for hedonic damages is not recoverable under either § 1983 or state law. Defendants' assertion is well taken. In *Tinch v. City of Dayton*, Nos. 94–3436, 94–3516, 1996 WL 77445, at *1 (6th Cir. Feb 20, 1996), the Sixth Circuit held that the law of the forum state should determine whether hedonic damages are recoverable under § 1983.[13] Thus, whether hedonic damages are recoverable in the case at bar will be determined under Tennessee law, regardless of whether plaintiffs are successful on their state or § 1983 claims, or both.

■■■ In Tennessee, survivors may not recover hedonic damages in wrongful death actions. *Spencer v. A–1 Crane Serv., Inc.*, 880 S.W.2d 938, 943–44 (Tenn. 1994). Plaintiffs, however, argue that at least with respect to their § 1983 claims, Tennessee law should not be applied because it is inconsistent with the federal law.[14] Plaintiffs' argument is without merit. A state law that does not allow for the recovery of hedonic damages is not inconsistent with federal law, or more specifically, the purposes of § 1983. *Tinch*, 1996 WL 77445, at *2–3. Accordingly, plaintiffs' demands for hedonic damages are dismissed as a matter of law.

### B. Punitive Damages

■■■ The City asserts that plaintiffs' demands for punitive damages are not recoverable from the City as a matter of law. The City's assertion is well taken. Punitive damages are not recoverable from a municipality under § 1983, *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), or under the GTLA. *Tipton County Bd. of Educ. v. Dennis*, 561 S.W.2d 148, 153 (Tenn.1978). Accordingly, to the extent plaintiffs' demand for punitive damages is made against the City, such damages are not recoverable.

### C. Plaintiffs' Injuries

Plaintiffs' demand for damages includes two types of claims. First, plaintiffs assert Alexander's personal claims as his representative, and seek compensation as his survivor. Second, plaintiffs seek compensation for their own injuries, including loss of consortium, resulting from Alexander's death. All defendants contest whether this second form of damages is recoverable as a matter of law.

■■■ Should any defendant be found liable under a state theory of liability, Tennessee law will control whether plaintiffs can recover for their own personal injuries. The parties dispute what law controls this issue should any of the defendants be found liable under § 1983. In *Robertson v. Wegmann*, 436 U.S. 584, 587, 98 S.Ct.

---

**13.** Although citation to unpublished Sixth Circuit precedent is disfavored, this case is referred to "because it establishes the law governing the present action and there is no published opinion that would serve as well." *Norton v. Parke*, 892 F.2d 476, 479 n.7 (6th Cir.1989) (internal quotations and citation omitted).

**14.** Under 42 U.S.C. § 1988, a federal court may not apply the forum state's law if it is inconsistent with federal law. *Wilson v. Garcia*, 471 U.S. 261, 267, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).

1991, 56 L.Ed.2d 554 (1978), the Supreme Court held that 42 U.S.C. § 1988 governs determinations on the applicable survivorship rule in actions brought under 42 U.S.C. § 1983.

> [Section 1988] recognizes that in certain areas federal law is unsuited or insufficient to furnish suitable remedies; federal law simply does not cover every issue that may arise in the context of a federal civil rights action. When federal law is thus "deficient," § 1988 instructs us to turn to the common law, as modified and changed by the constitution and statutes of the forum State, as long as these are not inconsistent with the Constitution and laws of the United States....
>
> ... [O]ne specific area not covered by federal law is that relating to the survival of civil rights actions under § 1983 upon the death of either the plaintiff or defendant. State statutes governing the survival of state actions do exist, however. These statutes, which vary widely with regard to both *the types of claims that survive and the parties as to whom survivorship is allowed,* were intended to modify the simple, if harsh, 19th-century common-law rule: an injured party's personal claim was always extinguished upon the death of either the injured party himself or the alleged wrongdoer. *Under § 1988, this state statutory law, modifying the common law, provides the principal reference point in determining survival of civil rights actions,* subject to the important proviso that state law may not be applied when it is "inconsistent with the Constitution and laws of the United States."

*Id.* at 589–90, 98 S.Ct. 1991 (emphasis added) (internal citations, quotations, footnotes, and alterations omitted). Following the Supreme Court's framework, the court finds that the principle reference point for determining what type of survivorship claims that may be brought pursuant to § 1983 is Tennessee law. Thus, Tennessee law will govern plaintiffs' contention that they can recover for their individual injuries regardless of whether liability is founded on state law or § 1983, unless liability is founded on § 1983 and the result is inconsistent with federal law.

In Tennessee, what damages are recoverable in a wrongful death action is governed by Tennessee Code Annotated § 20–5–113, which provides:

> Where a person's death is caused by the wrongful act, fault, or omission of another, and suit is brought for damages, as provided for by §§ 20–5–106 and 20–5–107, the party suing shall, if entitled to damages, have the right to recover for the mental and physical suffering, loss of time, and necessary expenses resulting to the deceased from the personal injuries, and also the damages resulting to the parties for whose use and benefit the right of action survives from the death consequent upon the injuries received.

The Tennessee Supreme Court has interpreted this statute as giving rise to a single cause of action vested in the decedent's representative, under which two types of damages may be recovered. *Jones v. Black,* 539 S.W.2d 123, 124–25 (Tenn.1976); *Davidson Benedict Co. v. Severson,* 109 Tenn. 572, 72 S.W. 967, 977 (1903). The first type of damage involves actual damages to the deceased, which include damages for his or her pain and suffering, medical expenses and funeral costs. *See Davidson Benedict Co.,* 72 S.W. at 977. The second type of damage involves the pecuniary value of the life of the deceased. Pecuniary value is "to be determined upon a consideration of his expectancy of life, his age, condition of health and strength, capacity for labor, and for earning money through skill in any art, trade, profession, occupation, or business, and his personal habits as to sobriety and industry." *Id.* (internal citations omitted).

█ Based on this framework, all defendants have asked the court to dismiss plaintiffs' cause of action for their own injuries. Plaintiffs make several argu-

ments in response. First, plaintiffs argue that virtually every case that has interpreted Tennessee Code Annotated § 20–5–113 in the last century has misconstrued it. Plaintiffs argue that the statute actually gives rise to a second cause of action in favor of survivors under which they may recover damages in their own right for injuries they received because of Alexander's death. The court finds plaintiffs' argument is without merit. To begin with, Tenn.Code Ann. § 20–5–113 only allows plaintiffs to recover when suit is brought in accordance with Tenn.Code Ann. §§ 20–5–106 and 20–5–107. Those sections unambiguously preserve from abatement or extinguishment the right of action which a person dying from the wrongful act of another would have had against the wrongdoer, had death not ensued. *Wilson v. Massengill*, 124 F.2d 666, 668–69 (6th Cir. 1942); *Hance v. Haun*, 216 Tenn. 176, 391 S.W.2d 621, 622 (1965). They do not vest a new cause of action in the decedent's representative or next of kin. *Wilson*, 124 F.2d at 668–69. Rather than addressing this, plaintiffs argue that Tenn.Code Ann. § 20–5–113 itself gives rise to a new cause of action in favor of survivors. Plaintiffs, however, have failed to cite a single Tennessee case decided after *Davidson Benedict Co.* in support of their theory, while the law favoring the single cause of action theory is extensive. *See, e.g., Jordan v. Baptist Three Rivers Hosp.*, 984 S.W.2d 593, 601 (Tenn. 1999); [15] *Jones*, 539 S.W.2d at 124–25; *Memphis St. Ry. Co. v. Cooper*, 203 Tenn. 425, 313 S.W.2d 444, 447–48 (1958) (citing cases); *Davidson Benedict Co.*, 72 S.W. at 977 (citing cases). The court is not free to ignore the Tennessee Supreme Court's interpretation of a Ten-

nessee statute, unless, perhaps, the statute is so clear on its face that only one reading might be possible. But here, the Tennessee Supreme Court has itself noted the ambiguity of the statute on this precise issue, *Jones*, 539 S.W.2d at 124, and this court agrees that the statute is ambiguous. Accordingly, this court is bound by the Tennessee Supreme Court's interpretation that the statute only gives rise to a single cause of action placed in the representative of the decedent. Plaintiffs also argue that application of Tennessee law produces a result inconsistent with the purpose of § 1983 and that the result cannot stand in light of the third prong of § 1988. Plaintiffs' argument is without merit. The mere fact that state law does not create a private right of action in survivors does not make the state law inconsistent with § 1983. To the contrary, the Sixth Circuit has held, similar to the result under Tennessee law, that § 1983 only provides a cause of action that is personal to the injured party. *See Purnell v. City of Akron*, 925 F.2d 941, 948 n. 6 (6th Cir.1991). Therefore, plaintiffs are precluded from bringing an action in their own right under either § 1983 or state law. Accordingly, defendants' motions to dismiss plaintiffs' cause of action for their own injuries is granted.

Plaintiffs also argue that even if no new cause of action is created, the pecuniary value of Alexander's life should include the pecuniary value of the loss of society, love, affection, and companionship that plaintiffs would have had but for the wrongful death of Alexander. This argument has previously been expressly rejected by the Tennessee Supreme Court. *Davidson Benedict Co.*, 72 S.W. at 981. However, on

---

**15.** There is language in *Jordan* that might indicate that the Tennessee Supreme Court now also believes that Tenn.Code Ann. § 20–5–113 vests a cause of action in survivors. *Id.* at 599 ("It must be remembered that, notwithstanding the accurate, technical characterization of Tenn.Code Ann. § 20–5–113 as survival legislation, the statute also provides for a cause of action that compensates survivors for their losses."). However, the court's

conclusion makes it clear that the court was not creating a new cause of action, but instead was only refining the term "pecuniary value." *Id.* at 601 ("We hold that consortium-type damages may be considered when calculating the pecuniary value of a deceased's life. This holding does not create a new cause of action but merely refines the term 'pecuniary value.'").

January 25, 1999, the Tennessee Supreme Court reversed course in holding that certain loss of consortium damages are now recoverable as an element of the pecuniary value of the decedent's life. *Jordan*, 984 S.W.2d 593, 598–601.

██ In *Jordan*, which was decided after Alexander's death, the Tennessee Supreme Court held that a spouse or child may recover loss of consortium damages as an element of the pecuniary value of a decedent's life. *Id.* The *Jordan* holding presents three questions for this court. First, the court must determine if *Jordan* should be applied to the facts of this case. The court holds that *Jordan* does apply since it did not change the law, it merely altered the way Tennessee's wrongful death statute has been interpreted. Accordingly, the court finds there are no "retroactivity" problems. Second, the court must determine if, in light of *Jordan*, the Tennessee Supreme Court would allow a parent to recover loss of consortium damages as an element of the pecuniary value of a decedent's life. The court believes the Tennessee Supreme Court would, dependent upon the facts of the relationship, allow a parent to recover loss of consortium damages just as it allowed a child to recover loss of consortium damages in *Jordan*. In *Jordan*, the court looked to three criteria to determine whether a child could recover for the loss of consortium of a parent. First, the court determined that such damages were not precluded by statute. *Id.* at 600. Second, the court looked to the modern trend in the law. Third, the court looked to possible bases for placing an economic value on parental consortium. *Id.* Looking at those same factors, the court believes the Ten-

nessee Supreme Court would also allow parents to recover consortium damages stemming from the death of a child. First, such damages are not precluded by statute. Second, the modern trend in the law appears to be to allow such damages. *See* John F. Wagner, *Recovery of Damages for Loss of Consortium Resulting from Death of Child—Modern Status*, 77 A.L.R.4th 411 (1990) (collecting cases). Third, several of the same bases that support recovery for spouses and children, such as the value of a family member to the family as a functioning social unit, would appear to equally support recovery for parents. Therefore, the court finds that under Tennessee law plaintiffs are entitled to claim, as an element of the pecuniary value of Alexander's life, their loss of consortium damages stemming from his death.

██ The third issue the court must address is whether the result under Tennessee law is inconsistent with federal law. The court finds that it is, and thus limits any loss of consortium damages plaintiffs might recover to such damages that are premised on a finding of liability under state tort law. The Sixth Circuit has held that a cause of action under § 1983 is personal to the injured party. *Purnell*, 925 F.2d at 948 n. 6; *Jaco v. Bloechle*, 739 F.2d 239, 241–43 (6th Cir.1984). It would be inconsistent to allow plaintiffs to recover damages for their own losses through the application of Tenn.Code Ann. § 20–5–113 which incorporates elements of both a survivor and wrongful death type statute. *See Jaco*, 739 F.2d at 242–43. Since federal law restricts the type of action that may be brought to a personal cause of action, a decedent's survivors may not recover for their own damages under § 1983.[16]

---

**16.** The court is aware that the Sixth Circuit has implicitly questioned the continuing viability of its holding in *Jaco. See Purnell*, 925 F.2d at 948 n. 6. In that footnote, the Sixth Circuit cited authority from other circuits that have allowed immediate family members to bring a § 1983 claim for "deprivation of the parent-child relationship in the wrongful death context." *Id.* The cited cases allowed

family members only to bring § 1983 claims that were premised on due process. *See Smith v. City of Fontana*, 818 F.2d 1411, 1417–20 (9th Cir.1987); *Bell v. City of Milwaukee*, 746 F.2d 1205, 1242–48 (7th Cir. 1984). The Amended Complaint does not clearly set forth a § 1983 claim for violations to plaintiffs' own due process rights stemming from Alexander's death. Even if the Amend-

Accordingly, plaintiffs may not maintain a cause of action in their own right. Plaintiffs can recover loss of consortium damages to the extent liability is based on state tort law, but may not recover loss of consortium damages for any liability that is premised on § 1983.

### VIII. *Conclusion*

For the foregoing reasons, Whipple's and Jones' motions to dismiss, or in the alternative for summary judgment, are denied with respect to plaintiffs' claims under § 1983 and state tort law. Whipple's and Jones' motions are granted with respect to plaintiffs' claims under the Tennessee Constitution.

The Memphis Police Department is dismissed as a defendant in this action.

The City of Memphis' motion to dismiss plaintiffs' negligence claim and claims arising under the Tennessee Constitution is granted. Plaintiffs are granted a period of ten days from the date of entry of this order to amend their Amended Complaint and plead compliance with the GTLA. The City's motion to dismiss plaintiffs' § 1983 claims is denied, except for its motion to dismiss plaintiffs' claim that the City ratified any unconstitutional conduct, which is granted.

All defendants' motions are granted to the extent that they asserted plaintiffs cannot recover on their claim for hedonic damages. The City's motion is granted to the extent it asserted plaintiffs cannot recover punitive damages from it. All defendants' motions are granted to the extent they asserted plaintiffs cannot maintain a cause of action for their own injuries. The Memphis defendants' motions are granted to the extent they asserted that loss of consortium damages cannot be recovered if liability is premised on the application § 1983. All defendants' motions are denied to the extent they assert plaintiffs cannot recover loss of consortium damages

if liability is based on the application of state tort law.

Plaintiffs' motion to delay consideration of the officers' motions for summary judgment is denied as moot.

---

ed Complaint was construed to include such a claim, however, *Jaco* still establishes the law

of this circuit and such a claim would be precluded.