JON P. McCALLA, UNITED STATES DISTRICT JUDGE
The Tennessee Supreme Court having denied certification of two questions regarding the constitutionality of the Tennessee punitive damages caps by Order docketed in this cause on June 27, 2016 (ECF No. 200), the case was remanded to this Court for determination of whether punitive damages are appropriate in the instant case and, if so, the proper amount of said damages.
For the following reasons, the Court finds that punitive damages are appropriate, that the Tennessee punitive damages cap is constitutional, and that the punitive damages to be awarded in the instant case are $700,000.
*715 I. BACKGROUND[1]
On December 22, 2014, the jury in the instant case rendered its verdict, awarding $350,000 in actual damages and $87,500 in bad faith damages to Plaintiff Tamarin Lindenberg ("Plaintiff") and her children. (ECF No. 151.) The jury also awarded $3,000,000 in punitive damages. (ECF No. 152.)
On December 18, 2014, during the jury trial in the instant case, Defendant Jackson National Life Insurance Company ("Defendant") moved for judgment as a matter of law. (Min. Entry, ECF No. 139.) Defendant filed a brief in support of its motion on January 5, 2015. (ECF No. 156.) Plaintiff responded in opposition on January 12, 2015. (ECF No. 159.) The Court denied the motion on November 24, 2015. (ECF No. 187.) In the order denying Defendant's motion for judgment as a matter of law, the Court deferred ruling on the amount of punitive damages to which Plaintiff is entitled because the constitutionality of the Tennessee statutory damages cap was an unresolved issue. (Id. at 26-29.) Also on November 24, 2015, the Court certified two questions to the Tennessee Supreme Court:
1. Do the punitive damages caps in civil cases imposed by Tennessee Code Annotated Section 29-39-104 violate a plaintiff's right to a trial by jury, as guaranteed in Article I, section 6 of the Tennessee Constitution ?
2. Do the punitive damages caps in civil cases imposed by Tennessee Code Annotated Section 29-39-104 represent an impermissible encroachment by the legislature on the powers vested exclusively in the judiciary, thereby violating the separation of powers provisions of the Tennessee Constitution?
(ECF No. 188 at 5.)
On June 23, 2016, the Tennessee Supreme Court denied certification. (ECF No. 200-1.) The Court held a telephonic status conference on July 1, 2016. (Min. Entry, ECF No. 202.) In the conference it was determined that Plaintiff, Defendant, and Intervenor State of Tennessee ("the State") would submit and rely on in the instant case their briefing before the Tennessee Supreme Court and the supporting amicus briefs. The Court would then resolve the remaining issues in this case. (See ECF Nos. 203-208.)
The mandate of the Tennessee Supreme Court issued on June 23, 2016 and was docketed in this Court on July 11, 2016. (ECF No. 209 (remanding "for further proceedings and final determination ... as shall effectuate the objects of this order to remand, and attain the ends of justice.").)
II. LEGAL STANDARD
"It is well-settled in Tennessee that 'courts do not decide constitutional questions unless resolution is absolutely necessary to determining the issues in the case and adjudicating the rights of the parties.' " Waters v. Farr, 291 S.W.3d 873, 881 (Tenn. 2009) (quoting State v. Taylor, 70 S.W.3d 717, 720 (Tenn. 2002) ). When facing state constitutional challenges, Tennessee statutes receive "a strong presumption" of constitutionality. Lynch v. City of Jellico, 205 S.W.3d 384, 390 (Tenn. 2006) (citing Osborn v. Marr, 127 S.W.3d 737, 740-41 (Tenn. 2004) ); see also Waters, 291 S.W.3d at 881 ("Our charge is to uphold the constitutionality of a statute wherever possible."). Tennessee courts must construe statutes in a way that "sustain[s] the *716 statute and avoid[s] constitutional conflict if at all possible, and ... indulge every presumption and ... resolve every doubt in favor of the statute's constitutionality." Howell v. State, 151 S.W.3d 450, 470 (Tenn. 2004) (citing Taylor, 70 S.W.3d at 721 ); see also In re Schafer, 689 F.3d 601, 605 (6th Cir. 2012) ("Where ... a [state] statute is challenged as unconstitutional, [federal courts] construe the statute to avoid constitutional infirmity when 'fairly possible.' " (quoting Eubanks v. Wilkinson, 937 F.2d 1118, 1122 (6th Cir. 1991) ) ). The presumption of constitutionality is especially burdensome in facial challenges to a statute, where "the challenger must establish that no set of circumstances exist under which [a challenged act of the legislature] ... would be valid." Lynch, 205 S.W.3d at 389.
III. ANALYSIS
A. Availability of Punitive Damages
The Tennessee Supreme Court stated in its order declining certification that "it would be imprudent for it to answer the certified questions concerning the constitutionality of the statutory caps on punitive damages in this case in which the question of the availability of those damages in the first instance has not been and cannot be answered by [it]." (ECF No. 200-1 at 2.) It is correct that "[t]he issue of the availability of the common law remedy of punitive damages in addition to the statutory remedy of the bad faith penalty ... was not certified [by this Court] ...." (Id. ) This Court, like another court in this district, "sees no persuasive data that the Tennessee Supreme Court would rule contrary to Riad [v. Erie Ins. Exchange, 436 S.W.3d 256 (Tenn. Ct. App. 2013) ]." Carroll v. Nationwide Prop. & Cas. Co., No. 2:14-cv-02902-STA, 2015 WL 3607654, at *5 (W.D. Tenn. June 8, 2015). The court in Riad found that a plaintiff's damages were "not statutorily limited to the recovery of the insured loss and the bad faith penalty." Id. at *4 (quoting Riad, 436 S.W.3d at 276 ). Further, this Court has previously determined that Plaintiff was both eligible for punitive damages (ECF No. 187 at 20-25) and entitled to punitive damages (id. at 25-26).[2] Thus, the Court must next determine the proper amount of punitive damages Plaintiff may recover.[3]
B. Amount of Punitive Damages
1. The Tennessee Punitive Damages Cap
The jury awarded Plaintiff $3,000,000 in punitive damages. (ECF No. 152.) There exist, however, punitive damages caps in *717 Tennessee; section 29-39-104(a)(5) of the Tennessee Code provides that: "Punitive or exemplary damages shall not exceed an amount equal to the greater of: (A) Two (2) times the total amount of compensatory damages awarded; or (B) Five hundred thousand dollars ($500,000) ...."[4] The Tennessee punitive damages statute does not prevent a jury, such as the jury in the instant case, from awarding punitive damages greater than the statutory limit because the punitive damages caps cannot be disclosed to a jury. Tenn. Code Ann. § 29-39-104(a)(6). Rather, a court is to apply the caps "to any punitive damages verdict." Id. The punitive damages statute also states:
Nothing in this section shall be construed as creating a right to an award of punitive damages or to limit the duty of the court ... to scrutinize all punitive damage awards, ensure that all punitive damage awards comply with applicable procedural, evidentiary and constitutional requirements, and to order remittitur when appropriate.
*718 Id. § 29-39-104(b) (emphasis added).[5]
2. Punitive Damages and the Right to Trial by Jury
Plaintiff argues that the Tennessee Constitution guarantees Plaintiff's right to trial by jury and that "[b]ecause a limitation on punitive damages did not exist at the time of the creation of the Tennessee Constitution, the punitive damages cap ... infringes on the fundamental right to a trial by jury." (Pl.'s Br. at PageID 4617, ECF No. 205-1.) Defendant argues that there has never been a constitutional right in Tennessee to a jury's punitive damages award such that the right to trial by jury would be infringed by the cap. (Def.'s Br. at PageID 4341, ECF No. 203-1.) While the Court agrees with Plaintiff that the right to trial by jury is guaranteed by the Tennessee Constitution, the Court agrees with Defendant that the punitive damages caps do not violate such a right.
a. Right to Trial by Jury Guaranteed by Tennessee Constitution
The Tennessee Constitution's Declaration of Rights secures a number of individual rights, including the right to a trial by jury. Tenn. Const. art. I, § 6. The Tennessee Constitution has always guaranteed "[t]hat the Right of trial by Jury shall remain inviolate." Tenn. Const. of 1796, art. XI, § 6 (amended 1870), http://share.tn.gov/tsla/founding_docs/33633_Transcript.pdf.[6] In its guarantee of a right to trial by jury in civil cases, the Tennessee Constitution preserves all the features of a jury trial "as [they] existed at common law ... 'under the laws and constitution of North Carolina[7 ] at the time of the adoption of the Tennessee Constitution of 1796.' " Young v. City of LaFollette, 479 S.W.3d 785, 793 (Tenn. 2015) (quoting Helms v. Tenn. Dep't of Safety, 987 S.W.2d 545, 547 (Tenn. 1999) ).
The Tennessee Constitution's guarantee of a right to trial by jury includes *719 "the right to have the factual issues in the case determined by a fair and unbiased jury." Ricketts v. Carter, 918 S.W.2d 419, 421 (Tenn. 1996). The assessment of damages is "a question [of fact] peculiarly within the province of the jury." Thompson v. French, 18 Tenn. 452, 459 (1837) ; see also Bonner v. Deyo, No. W2014-00763-COA-R3-CV, 2014 WL 6873058, at *4 (Tenn. Ct. App. Dec. 5, 2014) ("The Tennessee Constitution entrusts the responsibility of resolving questions of disputed fact, including a litigant's damages, to the jury.").
While the Tennessee Constitution guarantees the right to trial by jury, it does not guarantee that any plaintiff has a vested right to any particular legal remedy. See, e.g., Dowlen v. Fitch, 196 Tenn. 206, 264 S.W.2d 824, 825 (1954) ("The cases which hold that a person has no vested right in any particular remedy are abundant."). As such, "there is no underlying statutory or constitutional right to punitive damages" in Tennessee. Univ. of Tenn. Chattanooga v. Farrow, No. E2000-02386-COA-R9-CV, 2001 WL 935467, at *6 (Tenn. Ct. App. Aug. 16, 2001) ; see also Tenn. Code Ann. § 29-39-104(b). Since punitive damages are not meant to be compensatory, see, e.g., Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 900 (Tenn. 1992),[8] they amount to a "windfall for the plaintiff" to which a plaintiff specifically has no vested right, because punitive damages have "no relationship to the actual injury to the plaintiff."
*720 Vaughn v. Park Healthcare Co., 1994 WL 684485, at *8 (Tenn. Ct. App. Dec. 7, 1994).
To have a vested right in a punitive damages award, a court must first enter judgment in a plaintiff's favor, see Dowlen, 264 S.W.2d at 825 ; prior to that point, any jury findings as to an amount of punitive damages are not final and are subject to review by a court. See, e.g., Coppinger Color Lab, Inc. v. Nixon, 698 S.W.2d 72, 74 (Tenn. 1985) ("the discretion of the jury in fixing the amount of punitive damages is not beyond supervision by the Court"); Keith v. Murfreesboro Livestock Mkt., Inc., 780 S.W.2d 751, 755 (Tenn. Ct. App. 1989) ("While awarding punitive damages is the jury's prerogative, the jury's decision is not beyond judicial review." (citation omitted) ).
b. No Violation of Right to Trial by Jury
Plaintiff asserts that the determination of punitive damages awards is included within the state constitutional right to trial by jury. (Pl.'s Br. at PageID 4617-18, ECF No. 205-1 (citing four Tennessee cases).) Defendant argues that "Plaintiff's argument is fundamentally flawed, however, because she fails to distinguish the state constitutional right to have a jury resolve questions of liability with the legislature's authority to limit the remedy for a particular cause of action." (Def.'s Br. at PageID 4346, ECF No. 203-1.) Plaintiff has the burden to establish that the challenged statute is invalid. Lynch, 205 S.W.3d at 390. The Court finds that the right to trial by jury does not encompass the right to punitive damages as awarded by the jury.
Plaintiff relies on inapposite case law because the damages at issue in three cases she cites, Tenn. Coach & R.R. Co. v. Roddy, 85 Tenn. 400, 5 S.W. 286, 289 (1887) ; Thompson v. French, 18 Tenn. 452, 459 (1837) ; and Grace v. Curley, 3 Tenn. App. 1 (1926), were economic/compensatory damages, not punitive damages. A fourth case cited by Plaintiff, Wilkins v. Gilmore, offers some support for the proposition that juries have the authority to "award damages in respect of the malicious conduct of the defendant, and the degree of insult with which trespass had been attended." 21 Tenn. 140, 141 (1840). Wilkins, however, relied on a British treatise that cited only to British cases for the proposition. See supra p. ---- and note 8. While Plaintiff notes that "Tennessee, 'through North Carolina, adopted the common law of England as it existed in 1776,' " and the English cases that Plaintiff cites offer persuasive evidence that punitive damages existed at common law during the colonial period (Pl.'s Reply Br. at 7, ECF No. 205-2 (citing Dunn v. Palermo, 522 S.W.2d 679, 682 (Tenn. 1975) ) ), the Tennessee constitutional right to trial by jury encompasses only a right to the trial, not a right to the specific remedy of punitive damages, as it existed at common law. (See State's Br. at 8, ECF No. 208-1 (citing Garner v. State, 13 Tenn. 160, 176 (1833) (Whyte, J., concurring) ("What right of trial by jury is thus sanctioned and secured by the constitution? The answer is, 'the trial by jury as it then existed in force and use at the time of the adoption of the constitution.' " (emphasis added) ) ).) Plaintiff appears to concede in effect that the right does not exist[9] but maintains that a statute capping punitive damages nevertheless encroaches on the judicial power. (Pl.'s Reply Br. at 3, ECF No. 205-2; see also infra Part III.B.3.)
In addition to failing to establish a state constitutional right to punitive damages, *721 Plaintiff also fails to establish that punitive damages awards existed in North Carolina or in what is today Tennessee between 1776 and 1796.[10] As former Tennessee Justice Drowota noted in Hodges, there does not appear to be controlling authority in Tennessee prior to Wilkins that provides for an award of punitive damages in a jury trial. See Hodges, 833 S.W.2d at 900 ; supra p. ---- and note 8.
Furthermore, "the constitutional right to trial by jury does not apply to statutory rights and remedies created after the adoption of the 1796 Constitution." Young, 479 S.W.3d at 793 (emphasis added) (citing Helms, 987 S.W.2d at 547 ). "For such statutory rights and remedies, the Legislature is free to either dispense with the right of trial by jury, or provide for it." Id. at 793-94 (citations omitted). The Tennessee General Assembly likewise has the power "to abrogate the common law by statute." Guy v. Mut. of Omaha Ins. Co., 79 S.W.3d 528, 536 (Tenn. 2002) ; see also Nichols v. Benco Plastics, Inc., 225 Tenn. 334, 469 S.W.2d 135, 137 (1971) ("The legislature may abolish remedies recognized at common law and create new ones to attain permissible legislative object."); Alamo Dev. Corp. v. Thomas, 186 Tenn. 631, 212 S.W.2d 606, 610 (1948) ("[The state] may change the common law and the statutes so as to create duties and liabilities which never existed before." (quoting Cavender v. Hewitt, 145 Tenn. 471, 239 S.W. 767, 770 (Tenn. 1922) ) ); Nance v. O.K. Houck Piano Co., 128 Tenn. 1, 155 S.W. 1172, 1174 (1913) (recognizing the General Assembly's power to change the common law and rejecting the proposition that adoption of the Tennessee Constitution froze the common law in time). The General Assembly's power is broad enough that it also extends to altering or abolishing common law defenses, in addition to altering or abolishing remedies. See, e.g., Scott v. Nashville Bridge Co., 143 Tenn. 86, 223 S.W. 844, 848 (1920). The United States Supreme Court has recognized that "legislatures enjoy broad discretion in authorizing and limiting permissible punitive damages awards." Cooper Indus., Inc. v. Leatherman Tool Grp., Inc., 532 U.S. 424, 433, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001).[11]
1. Comparison with Other States
Plaintiff offers case law from Missouri and Ohio[12] to support her assertion *722 that statutory punitive damages caps violate the fundamental right to trial by jury. (Pl.'s Br. at PageID 4619-20, ECF No. 205-1.) In Lewellen v. Franklin, the Supreme Court of Missouri invalidated Missouri's statutory punitive damages caps, Mo. Rev. Stat. § 510.265, stating that, "[u]nder the common law as it existed at the time the Missouri Constitution was adopted, imposing punitive damages was a peculiar function of the jury," and the statute unconstitutionally "changes the right to a jury determination of punitive damages as it existed in 1820." 441 S.W.3d 136, 143-44 (2014) (en banc). The Missouri Constitution, similar to the Tennessee Constitution, provides that "the right of trial by jury as heretofore enjoyed shall remain inviolate," Mo. Const. art. I, § 22(a), but unlike in Tennessee, courts in Missouri have historically awarded punitive damages, even prior to the adoption of the state's constitution. See Lewellen, 441 S.W.3d at 143-44 (collecting cases). Missouri's statutory law is also distinguishable from Tennessee's in that it also does not disavow that any statutory provisions may create a right to punitive damages. Compare Mo. Rev. Stat. § 510.270 (codifying the common-law practice of leaving the determination of money damages, including exemplary and punitive damages, to a jury) with Tenn. Code Ann. § 29-39-104(b) ("Nothing in this section shall be construed as creating a right to an award of punitive damages ....").
More persuasive, however, is North Carolina law, to which Defendant cites (see Def.'s Br. at PageIDs 4350-52, ECF No. 203-1), since the Tennessee Constitution derives from the North Carolina Constitution. The Supreme Court of the State of North Carolina has upheld the state's statutory punitive damages caps against a challenge that the statute violates the right to trial by jury. See Rhyne v. K-Mart Corp., 358 N.C. 160, 594 S.E.2d 1 (2004). In Rhyne, the jury awarded the plaintiffs $11.5 million each in punitive damages, and the trial court reduced the award to $250,000 for each plaintiff, per North Carolina General Statute section 1D-25,[13] a judgment the state appellate and state supreme courts found proper. See ibr.US_Case_Law.Schema.Case_Body:v1" id="p723" href="#p723" data-label="723" data-citation-index="1" class="page-label">*723id. at 6, 21. Like the Tennessee Constitution, the North Carolina Constitution guarantees a right to trial by jury in civil matters. See N.C. Const. art. I, § 25 ("In all controversies at law respecting property, the ancient mode of trial by jury is one of the best securities of the rights of the people, and shall remain sacred and inviolable."). The "respecting property" language is significant. The Supreme Court of the State of North Carolina has construed article I, section 25"to apply only to actions respecting property in which the right to a jury trial existed either at common law or by statute before the 1868 Constitution became operative and for actions created since then the right to a jury depends upon statutory authority ...." State ex rel. Rhodes v. Simpson, 91 N.C.App. 517, 372 S.E.2d 312, 314 (1988) (citing The Chowan & Southern R.R. Co. v. Parker, 105 N.C. 246, 11 S.E. 328 (1890) ), rev'd on other grounds, 325 N.C. 514, 385 S.E.2d 329 (1989). Thus, since the Rhyne plaintiffs' action for punitive damages was not a controversy "respecting property," their argument that juries had awarded punitive damages prior to the adoption of the North Carolina Constitution of 1868, was not persuasive.[14] See 594 S.E.2d at 10-11. Additionally, a federal court in North Carolina has indicated that North Carolina's statutory punitive damages caps could be applied in a case against an insurance provider in which the plaintiff raised a bad faith claim. See Guessford v. Pa. Nat. Mut. Cas. Ins. Co., 983 F.Supp.2d 652, 670 (M.D.N.C. 2013) (denying the defendant's request to limit the scope of punitive damages at the summary judgment stage while noting that punitive damages caps already exist in North Carolina).
Plaintiff attempts to distinguish several states-but not North Carolina-that have upheld statutory punitive damages caps from Tennessee (Pl.'s Br. at PageIDs 4621-25, ECF No. 205-1), but the Court does not find these distinctions persuasive. For example, Plaintiff argues that the Alaska Supreme Court's holding in Evans ex rel. Kutch v. State, 56 P.3d 1046 (2002) that the state statutory punitive damages cap was constitutional relied on an equal protection challenge and not a challenge to the right to trial by jury. (Id. at PageIDs 4622-23.) Plaintiff asserts that "[b]ecause Tennessee's constitutional language guaranteeing the right to a jury trial is even stronger than Alaska's," the Court should find the dissent in Evans persuasive. (Id. at PageID 4623.) Plaintiff omits in her quoting of the dissent, however, a noticeable distinction between the damages to which the dissent refers and the punitive damages at issue in the instant case; the quoted language, in full, reads: "Construing constitutional provisions that are textually and historically similar to Alaska's, courts in Kansas, Oregon, Washington, and Alabama have held that non[-]economic damages caps violate a plaintiff's right a jury trial." Evans, 56 P.3d at 1071 (Bryner, J., dissenting). The word "non-economic," which Plaintiff failed to include in her brief, is crucial to this analysis: non-economic damages are a form of compensation related to actual injury, while punitive damages are designed to punish and deter wrongdoing.[15]
*724 2. Comparison with Other Punitive Damages Prohibitions
Defendant asserts that outright federal and state statutory prohibitions on punitive damages in civil suits in which a municipality is a defendant are constitutional, and thus this Court should also find section 29-39-104 constitutional. (See Def.'s Br. at PageIDs 4352-53 & n.10, ECF No. 203-1 (citing Alexander v. Beale St. Blues Co., 108 F.Supp.2d 934, 951 (W.D. Tenn. 1999) ).) Such prohibitions on punitive damages recovery from municipal or local governments are a matter of public policy. See, e.g., Tipton Cty. Bd. of Educ. v. Dennis, 561 S.W.2d 148, 152 (Tenn. 1978). The Court's role is not to inquire into the relative wisdom of the legislature's policy priorities or its pronouncements but rather to interpret and apply the law. Richardson v. Young, 122 Tenn. 471, 125 S.W. 664, 668 (1910) ("[T]he legislative power is the authority to make, order, and repeal, the executive, that to administer and enforce, and the judicial, that to interpret and apply, laws."); see also infra Part III.B.3. As such, the Court recognizes and considers the fact that other laws constitutionally prevent recovery of punitive damages in Tennessee.
c. Conclusion
Tennessee authority and authority from other states demonstrate that the Tennessee statutory punitive damages caps are valid. They do not inhibit a jury's fact-finding role, as guaranteed by the state constitution, nor do they inhibit the jury's ability to determine an appropriate amount of punitive damages in light of the facts of the given case. Rather, the statutory punitive damages caps, applied after any jury determination has concluded, are independent of the right to trial by jury in Tennessee. Further, there exists no right to any specific remedy, including punitive damages. Thus, the Court finds that the statutory punitive damages caps do not violate Plaintiff's right to trial by jury.
3. Punitive Damages and the Separation of Powers
Plaintiff also asserts that the punitive damages caps "violate[ ] the separation-of-powers principles contained in the Tennessee Constitution." (Pl.'s Br. at PageID 4620, ECF No. 205-1.) Defendant argues that "a legislative limitation on the amount of a punitive award does not unconstitutionally invade the judicial domain." (Def.'s Br. at PageID 4341, ECF No. 203-1.) The Court agrees with Defendant.
a. Separation of Powers in the Tennessee Constitution
The original Tennessee Constitution of 1796 gave the General Assembly what some thought to be outsized power, relative to the other branches, so a subsequent constitutional convention amended the framing document to include, inter alia, an express provision dividing governmental powers across three branches, the text of which has since remained undisturbed. See Hargett, supra note 6, at 641; see also Tenn. Const. of 1834, art. II, § 1 (amended 1870) ("The powers of the government shall be divided into three distinct departments; the Legislative, Executive and Judicial."), http://share.tn.gov/tsla/founding_docs/33662_Transcript.pdf; Tenn. Const. art. II, § 1 (same). A separate section provides that: "No person or persons belonging to one of these departments shall exercise any of the powers properly belonging to either of the others, except in *725 the cases herein directed or permitted." Tenn. Const. art. II, § 2 ; Tenn. Const. of 1834, art. II, § 2 (amended 1870) (same). Aside from these provisions that expressly compartmentalize governing authority, the Tennessee Constitution has always separately vested all legislative authority in a bicameral General Assembly, and all judicial power in the state's courts. See Tenn. Const. art. II, § 3 ("The Legislative authority of this State shall be vested in a General Assembly, which shall consist of a Senate and House of Representatives, both dependent on the people."); Tenn. Const. of 1796, art. I, § 1 (amended 1870) (same); cf. Tenn. Const. art. VI, § 1 ("The judicial power of this State shall be vested in one Supreme Court and in such Circuit, Chancery and other inferior Courts as the Legislature shall from time to time ordain and establish ...."); Tenn. Const. of 1796, art. V, § 1 (amended 1870) (same).
Thus, the state constitution expressly limits the General Assembly's influence over the judicial branch's power and jurisdiction to the establishment or dissolution of inferior courts. The General Assembly has "no constitutional authority to enact rules, either of evidence or otherwise, that strike at the very heart of a court's exercise of judicial power." State v. Mallard, 40 S.W.3d 473, 483 (2001). The judicial power in Tennessee includes "the powers to hear facts, to decide the issues of fact made by the pleadings, and to decide the questions of law involved." Id."[A]ny legislative enactment that purports to remove the discretion of a trial judge in making determinations of logical or legal relevancy impairs the independent operation of the judicial branch of government, and no such measure can be permitted to stand." Id.
Within the system of courts, the Tennessee Constitution has always restrained judges' authority to restating testimony and instructing juries on the law, leaving the resolution of questions of fact exclusively to juries. See Tenn. Const. art. VI, § 9 ; Tenn. Const. of 1796, art. V, § 5 (amended 1870). As discussed above, however, the Tennessee Constitution does not prohibit the legislature from codifying, altering, or abrogating common-law causes of action and remedies. See infra Part III.B.2.b; see also, e.g., Tenn. Code Ann. § 56-7-105 (reducing available damages in a bad-faith refusal to pay an insurance claim case to twenty-five percent of the plaintiff's loss). "It is within the province of the General Assembly, not the judiciary, to establish and control the remedies that are available to persons seeking judicial relief." Caudill v. Foley, 21 S.W.3d 203, 210 (Tenn. Ct. App. 1999) (emphasis added).
b. No Violation of Separation of Powers
Plaintiff asserts that, because juries are "the judges of damages awards," they have a "constitutional [judicial] function to independently decide controversies," and the statutory punitive damages caps thus infringe upon judicial power. (Pl.'s Br. at PageID 4621, ECF No. 205-1 (citing Mallard, 40 S.W.3d at 483 ).) Defendant argues that a legislature has the authority "to alter a litigant's common law legal remedy" without violating the Tennessee Constitution. (Def.'s Br. at PageID 4359, ECF No. 203-1.) The Court finds that the statutory punitive damages caps expressly preserve judicial review of punitive damages awards and do not encroach upon judicial power.
Tennessee juries find as to facts; Tennessee courts instruct juries as to applicable laws, and have authority in certain contexts to withdraw certain questions from laymen that are otherwise "[t]he province of the jury." 2 Lawrence A. Pivnick, Tenn. Cir. Ct. Practice § 25:1 *726 (2016).[16] The text of the Tennessee Constitution vests judicial power in the courts, not in juries. Tenn. Const. art. VI, § 1 ("The judicial power of this State shall be vested in one Supreme Court and in such Circuit, Chancery and other inferior Courts as the Legislature shall from time to time, ordain and establish ...." (emphasis added) ). It does not follow, as Plaintiff argues,[17] that a statutory law encroaches on constitutional judicial power merely because a court applies the law to the "undisputed" facts as found by a jury during a trial and formally established in its verdict.[18] The Tennessee punitive damages statute expressly provides that a court has authority to review punitive damages awards and to grant "judgment as a matter of law prior to or during a trial on a claim for punitive damages." Tenn. Code Ann. §§ 29-39-104(b), (f). Where the legislature does not intend or attempt to usurp the judicial power, a statute should survive constitutional scrutiny. Mallard, 40 S.W.3d at 485 ("because the legislature did not intend to remove the discretion of the trial judge to determine the logical or legal relevance of such evidence, the statute ... should be permitted to operate to the fullest extent allowed ...."); cf. State v. McKaughan, No. W2013-00676-CCA-R3-CD, 2014 WL 2547768, at *6 (Tenn. Crim. App. June 2, 2014) (upholding a criminal evidence statute from a separation of powers challenge "because it neither attempts to remove the trial court's discretion to determine what evidence is logically or legally relevant to an ultimate fact of consequence nor completely usurps the court's preliminary 'gatekeeper' function and dictate 'the ultimate judicial determination.' ").[19]
1. Remittitur
Plaintiff argues that section 29-39-104 of the Tennessee Code unconstitutionally *727 encroaches on a court's power of remittitur, a power that is constitutional because it operates "on a case-by-case basis," as compared with statutory caps, which are "blanket rule[s]" and "arbitrary." (Pl.'s Br. at PageIDs 4625-26, ECF No. 205-1 (citing, inter alia, Webb v. Canada, No. E2006-01701-COA-R3-CV, 2007 WL 1519536, at *2 (Tenn. Ct. App. May 25, 2007) (discussing Tenn. Code Ann. § 20-10-102 ) ), ECF No. 205-1.) Plaintiff also argues that "a [statutory] cap does not permit a trial court to exercise its discretion on a case-by-case basis." (Pl.'s Reply Br. at 4, ECF No. 205-2.)
Nothing in the text of the statute prevents a court from remitting a punitive damages award after applying the cap, alternatively ordering a new trial if a plaintiff does not want to accept a remitted award, or entering judgment as a matter of law; the statute merely prohibits the entry of judgment for a punitive damages award in excess of the greater of two times the compensatory damages award in a case or $500,000. See generally Tenn. Code Ann. § 29-39-104. Remittitur has roots in Tennessee common law, but was codified and modified by the General Assembly in 1911.[20] See Tenn. Code Ann. § 20-10-102 ; Smith v. Shelton, 569 S.W.2d 421, 423-425 (Tenn. 1978) (citing Lambert Bros. v. Larkins, 200 Tenn. 674, 296 S.W.2d 353, 355-56 (1956) (Swepston, J., dissenting) ) (observing that, although Tennessee courts had ordered remittitur "long before the [20th century]," the legislation codifying the common law of remittitur also modified it to grant plaintiffs and defendants a right of appeal, which did not previously exist, when they did not want to accept a judicially altered damages award). Thus, even if section 29-39-104 does encroach on remittitur, notwithstanding that its text expressly disavows any construction of it as so doing,[21] it would be encroaching on a statutory power, and not on a constitutional investiture of judicial power.
2. Public Policy Considerations
Plaintiff also argues that the caps "undercut[ ] one of the central purposes of punitive damages awards, namely, deterrence," and asks the Court to invalidate the statute because "[t]he punishment must fit the crime, and Tennessee's caps frustrate this longstanding principle of justice." (Pl.'s Br. at PageIDs 4626-27, ECF No. 205-1 (citing Amelia J. Troy, Comment, Statutory Punitive Damages Caps and the Profit Motive: An Economic Perspective, 40 Emory L.J. 303, 304 (1991) (arguing that punitive damages are more effective when defendants cannot predict what the amount will be) ).) Tennessee's statutory punitive damages caps permit awards of the greater of twice the amount of compensatory damages, or $500,000. See Tenn. Code Ann. § 29-39-104(a)(5). The statute removes any cap in instances of intentional torts, extreme recklessness, or felonious conduct. See generally Tenn. Code Ann. § 29-39-104(a)(7) ; cf. BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 568, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) (setting forth a standard to ensure that punitive damages awards do not violate a defendant's rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution). With respect to the statute's purported arbitrariness, the reasoning employed by the Ohio Supreme Court in Arbino is instructive here. "Setting the limitation at double the amount of compensatory damages received by the plaintiff ensures that the defendant *728 may still be punished.... This careful compromise represents a level of thought and attention to detail not seen in arbitrary or unreasonable statutes." 880 N.E.2d at 442-43.
Plaintiff's amicus also argues that "[t]he caps produce a situation where a jury renders a verdict, only to have it deemed meaningless and instead, categorically adjudicated by the legislature.... These caps effectively rob affected claimants of the reimbursement they are owed for the harms they have suffered." (Br. for United Policyholders Supporting Pl. at 13, ECF No. 207-1.) The legislature does not adjudicate claims under section 29-39-104. The jury finds general liability in one proceeding, the propriety and level of punitive damages in another proceeding, and enters a separate verdict for each proceeding. In both proceedings, the court adjudicates by entering judgment, after making a determination regarding remittitur or judgment as a matter of law. In the second proceeding, the court must apply a statutory edict to the jury verdict before entering final judgment. See generally Tenn. Code Ann. § 29-39-104. Furthermore, capping punitive damages does not, as Plaintiff's amicus contends, "rob affected claimants of the reimbursement they are owed." Punitive damages are not compensatory in nature, and are, as discussed above, a windfall for plaintiffs. See supra pp. ---- - ----. Thus, the Court finds that invalidating the statutory punitive damages cap as a matter of public policy is unfounded in the law.
c. Conclusion
The Tennessee statutory punitive damages caps provide for judicial review of a punitive damages award; the statute does not unduly usurp judicial power and, therefore, survives constitutional scrutiny. The Court finds that the statutory punitive damages caps do not violate the separation of powers doctrine.
4. Application of the Punitive Damages Cap
Having found that the Tennessee punitive damages caps imposed by section 29-39-104(a)(5) are constitutional, the Court must determine whether subsection (A) or (B) applies in the instant case. Plaintiff may receive "an amount equal to the greater of: (A) Two (2) times the total amount of compensatory damages awarded; or (B) Five hundred thousand dollars ($500,000)." Tenn. Code Ann. § 29-39-104(a)(5). Since the jury awarded Plaintiff compensatory damages of $350,000 (see ECF No. 151 at 1),[22] Plaintiff would receive $700,000 under subsection (A), which is greater than the $500,000 designated by subsection (B). Thus, the Court finds that Plaintiff is entitled to $700,000 in punitive damages.[23]
IV. CONCLUSION
For the foregoing reasons, the Court finds that the Tennessee statutory punitive damages caps are constitutional. The caps neither violate Plaintiff's right to trial by jury nor the separation of powers doctrine.[24] The Court further applies the relevant *729 cap and finds that Plaintiff is entitled to punitive damages in the amount of $700,000.
IT IS SO ORDERED , this 28th day of September, 2016.

A more comprehensive procedural history and factual background up to and including November 24, 2015, is provided in the Court's order denying Defendant's motion for judgment as a matter of law and granting Plaintiff's motion for certification of questions to the Tennessee Supreme Court. (See ECF No. 187 at 1-8.)

The Court also discussed in detail the availability of punitive damages in addition to the statutory bad faith penalty in its December 9, 2014 order denying Defendant's motion to dismiss Plaintiff's claim for punitive damages. (See ECF No. 124 at 9-23.) The Court does not find that intervening law has changed its analysis. See, e.g., Carroll, 2015 WL 3607654, at *5 (finding that the statute setting forth the bad-faith penalty does not preclude punitive damages in breach-of-insurance-contract cases).

Defendant argued in its briefing before the Tennessee Supreme Court that this Court needed to address first "whether the punitive award [by the jury] was impermissibly excessive under state and federal due process standards" before the constitutional question could be answered by the Tennessee Supreme Court. (Def.'s Br. at PageID 4338, ECF No. 203-1.) Defendant argued that this Court needed "to apply the factors pronounced in Hodges v. S.C. Toof & Co., 833 S.W.2d 896 (Tenn. 1992) to assess whether the jury's punitive award contravenes Jackson National's state due process rights." (Id. at PageID 4339, ECF No. 203-1.) This Court rejected Defendant's arguments in its February 1, 2016, order denying Defendant's motion to revise. (See ECF No. 198 at 4-9 (finding that the Court is not required to follow state procedural rules and analyzing the punitive damages award in light of federal due process considerations).)

The Tennessee General Assembly enacted statutory caps on punitive damages awards as part of a broader tort reform package, the Tennessee Civil Justice Act of 2011 ("TCJA"). See Tenn. Code Ann. § 29-39-104 ; 2011 Tenn. Pub. Acts 510. Governor Haslam's administration and Tennessee House and Senate sought to boost the local economy and reduce unemployment by providing predictability in the state's tort liability regime that would allow Tennessee to more rigorously compete with other southern states in attracting companies looking to relocate their operations. See, e.g., Regular Calendar: Hearing on H.B. 2008 Before the Tennessee House Comm. on Judiciary, 2011 Leg., 107th Sess. at 29:55-30:10, (Tenn. 2011), http://tnga.granicus.com/MediaPlayer.php?view_id=196&clip_id=4078 (statements of Reps. Mike Stewart and Vance Dennis, Members, H. Comm. on Judiciary); see also Office of the Governor, Haslam Applauds Final Passage of Tennessee Civil Justice Act!, State of Tennessee Website (May 20, 2011, 5:45 AM), https://www.tn.gov/governor/news/30892 ("The legislation revises the state's civil justice system to make Tennessee more competitive for new jobs with surrounding states by bringing predictability and certainty to businesses calculating potential litigation risk and cost."). Some lawmakers in the Tennessee House expressed concern during floor debates that the TCJA would encroach on Tennesseans' state constitutional right to a trial by jury, but it is unclear to which specific provisions of TCJA, if any, they objected-the caps on noneconomic damages awards, punitive damages awards, or both-or whether they thought the entire bill was unconstitutional. See House Session-32nd Legislative Day: Consideration of H.B. 2008 Before the Tennessee House, 2011 Leg., 107th Sess. at 43:45-45:21, 1:08:06-1:15:35 (Tenn. 2011), http://tnga.granicus.com/MediaPlayer.php?view_id=196&clip_id=4236 (statements of Reps. Craig Fitzhugh and Mike Stewart, Members). In the Tennessee Senate, lawmakers objected to caps on punitive damages awards, albeit on policy grounds instead of constitutional grounds, fearing that the then-prospective caps would incentivize multi-billion dollar corporations from foreign countries seeking cover from civil liability to relocate to Tennessee, who would in turn ostensibly harm Tennessee citizens with relative impunity thereafter. Senate Session-34th Legislative Day: Consideration of S.B. 1522 Before the Tennessee Senate, 2011 Leg., 107th Sess. at 1:30:47-1:44:42 (Tenn. 2011), http://tnga.granicus.com/MediaPlayer.php?view_id=196&clip_id=4266 (statements of Sens. Roy Herron, Andy Berke, and Jim Kyle, Members of the Tennessee legislature). Nevertheless, the bills passed in both houses. See House Session-32nd Legislative Day: Consideration of H.B. 2008 Before the Tennessee House, 2011 Leg., 107th Sess. at 1:49:07-1:49:50 (Tenn. 2011), http://tnga.granicus.com/MediaPlayer.php?view_id=196&clip_id=4236; Senate Session-34th Legislative Day: Consideration of S.B. 1522 Before the Tennessee Senate, 2011 Leg., 107th Sess. at 3:55:13-3:55:47 (Tenn. 2011), http://tnga.granicus.com/MediaPlayer.php?view_id=196&clip_id=4266.

The statute also provides that: "Nothing contained in this chapter shall be construed to limit a court's authority to enter judgment as a matter of law prior to or during a trial on a claim for punitive damages." Tenn. Code Ann. § 29-39-104(f).

The Tennessee Constitution has been amended several times since 1796, see Tre Hargett, Tenn. Sec'y of State, Tennessee Blue Book 641 (2015-2016), and the provision guaranteeing a right to a jury trial was amended in 1870, see Tenn. Const. of 1870, art. I, § 6 ("That the right of trial by jury shall remain inviolate, and no religious or political test shall ever be required as a qualification for jurors" (emphasis added) ), but such amendments have never disturbed the right to a trial by jury.

Before Tennessee was admitted to the Union, the lands largely comprising it today were subject to the laws of North Carolina, which had adopted its Constitution in 1776, following a brokered "private 'treaty' " between a North Carolina land speculator and the Cherokee tribe. See Cumberland Capital Corp. v. Patty, 556 S.W.2d 516, 519 (Tenn. 1977) (noting that North Carolina's 1776 Constitution was the precursor to Tennessee's 1796 Constitution, and that North Carolina law "basically was the organic law of the territory of Tennessee" prior to Tennessee's first Constitutional Convention at Knoxville in 1796); see also In re Estate of Trigg, 368 S.W.3d 483, 491 (Tenn. 2012) ("When Tennessee drafted its constitution and became a state in 1796, it inherited the 'legal and political institutions' created by North Carolina." (quoting Robert Pritchard, A Treatise on the Law of Wills and Administration § 34, at 38-39 (2d ed. 1928) ) ); Hargett, supra note 6, at 503, 506-12 (describing how the territories known as Kentucky and Middle Tennessee originally came under North Carolinian jurisdiction, as opposed to Virginian jurisdiction, and how Tennessee emerged as an independent state following North Carolina's ratification of the United States Constitution in 1789 and cessation of certain of its western territories to the federal government).

Former Tennessee Supreme Court Justice Drowota's majority opinion in Hodges provides an instructive history of the development of common-law punitive damages in Tennessee that is relevant to the instant case:
As early as 1840, this Court stated: "In an action of trespass the jury are not restrained, in their assessment of damages, to the amount of the mere pecuniary loss sustained by the plaintiff, but may award damages in respect of the malicious conduct of the defendant, and the degree of insult with which the trespass had been attended." Wilkins v. Gilmore, 21 Tenn. 140, 141 (1840). Shortly thereafter we explained that these damages should operate to punish the defendant and deter others from like offenses. Now termed punit[ive], vindictive, or exemplary damages, they were legally appropriate "in cases of fraud, malice, gross negligence, or oppression." Exemplary damage awards became proper in two instances: first, if the wrongdoer acted with fraudulent, malicious, or oppressive intent; and second, if the act, while not done with malicious intent, was done "in a rude, insulting or reckless manner, in disregard of social obligations, or with such gross negligence as to amount to positive misconduct." More recently we stated that punitive damages are available in cases involving fraud, malice, gross negligence, oppression, wrongful acts done with bad motive or so recklessly as to imply a disregard of social obligations, or where willful misconduct or an entire want of care raises a presumption of conscious indifference to the consequences. The contemporary purpose of punitive damages is not to compensate the plaintiff but to punish the wrongdoer and to deter the wrongdoer and others from committing similar wrongs in the future.
833 S.W.2d 896, 900 (Tenn. 1992) (emphasis added) (citations omitted). The phrase "[a]s early as 1840" is legally significant and determinative in the instant case, in that it suggests that there are no binding Tennessee precedents predating Wilkins that provide for the kind of damages awards in Tennessee that we call punitive damages today. The Wilkins court, writing in 1840, cited to an English treatise, published in 1830, for the proposition that:
In an action of trespass the jury are not restrained, in their assessment of damages, to the amount of the mere pecuniary loss sustained by the plaintiff, but may award damages, in respect of the malicious conduct of the defendant, and the degree of insult with which the trespass has been attended.
21 Tenn. at 141 (citing 3 Thomas Starkie, A Practical Treatise on the Law of Evidence: And Digest of Proofs, in Civil and Criminal Proceedings 1450-51 (1830) ).

Plaintiff acknowledges that the right to trial by jury is limited insofar "as it existed at the formation of the [Tennessee] Constitution." (Pl.'s Reply Br. at 2, ECF No. 205-2 (quoting Trigally v. City of Memphis, 46 Tenn. 382, 385 (1869) ).)

In those decades, Tennessee was "a rough frontier state with what no one would consider to be a robust and well developed legal practice" because "[b]y 1800, the state still only had approximately a population of 105,602, with a majority of its 13,893 black residents enslaved," and civil litigation was thus ostensibly infrequent. (Br. for Beacon Center as Amicus Curiae Supporting Def. at PageID 4510 & n.4, ECF No. 204-1 (emphasis added).)

The Supreme Court noted that punitive damages serve functions similar to criminal offense punishments. Cooper Indus., 532 U.S. at 432-33, 121 S.Ct. 1678. Notably, the Tennessee General Assembly also has the power to enact laws defining criminal offenses and punishments. See Woods v. State, 130 Tenn. 100, 169 S.W. 558, 559 (1914). The General Assembly has enacted statutes that establish sentencing ranges for felony conduct, in direct contrast to the traditional criminal practice of jury determinations of criminal sentences, and courts had "virtually no authority to alter" a sentence, but "simply [to] impose[ ] the sentence." (Br. for Beacon Center as Amicus Curiae Supporting Def. at PageID 4528, ECF No. 204-1.)

Plaintiff quotes a 1999 decision of the Ohio Supreme Court, which found that statutory limits on punitive damages violated the right to trial by jury. (Pl.'s Br. at PageID 4620, ECF No. 205-1 (quoting State ex rel. Ohio Acad. of Trial Lawyers v. Sheward, 86 Ohio St.3d 451, 715 N.E.2d 1062, 1091 (1999) ).) Plaintiff also acknowledges, however, in a footnote, that "[t]he Ohio Supreme Court later upheld punitive damages caps passed by the Ohio legislature following Sheward." (Id. at PageID 4620 n.5 (citing Arbino v. Johnson & Johnson, 116 Ohio St.3d 468, 880 N.E.2d 420 (2007) ).) The current status of Ohio law is that the punitive damages awards caps contained in section 2315.21 of the Ohio Revised Code are facially constitutional. Arbino, 880 N.E.2d at 441 ("regulation of punitive damages is discretionary and ... states may regulate and limit them as a matter of law without violating the right to a trial by jury"); see also Bell v. Zurich Am. Ins. Co., 156 F.Supp.3d 884, 891 (N.D. Ohio 2015) (applying Ohio statutory punitive damages cap to a default judgment resulting from a bad faith insurance claim). But see Roginski v. Shelly Co., 31 N.E.3d 724, 762-63 (Ohio Ct. Com. Pl. 2014) (invalidating Ohio statute as a violation of the Ohio Constitution's due process and equal protection guarantees, as applied).

The North Carolina statute provides that:
(a) In all actions seeking an award of punitive damages, the trier of fact shall determine the amount of punitive damages separately from the amount of compensation for all other damages.
(b) Punitive damages awarded against a defendant shall not exceed three times the amount of compensatory damages or two hundred fifty thousand dollars ($250,000), whichever is greater. If a trier of fact returns a verdict for punitive damages in excess of the maximum amount specified under this subsection, the trial court shall reduce the award and enter judgment for punitive damages in the maximum amount.
(c) The provisions of subsection (b) of this section shall not be made known to the trier of fact through any means, including voir dire, the introduction into evidence, argument, or instructions to the jury.
N.C. Gen. Stat. § 1D-25(a) -(c) (emphasis added).

Alternatively, the Rhyne plaintiffs argued that "property" should be construed broadly so as to include a right to punitive damages. 594 S.E.2d at 11. Their argument, however, was unsuccessful. See id. at 12 ("[A]n entitlement to an award of punitive damages does not represent a right vested in a plaintiff. A plaintiff's recovery of punitive damages is fortuitous, as such damages are assessed solely as a means to punish the willful and wanton actions of defendants ...." (citing Overnite Transp. Co. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., 257 N.C. 18, 125 S.E.2d 277, 286 (1962) ) ).

A Tennessee trial court has similarly held that the Tennessee statutory non-economic damages cap under section 29-39-102 of the Tennessee Code is unconstitutional. (See Clark v. Cain, No. 12-C1147, 2015 WL 1137546 (Cir. Ct. Hamilton Cnty. Mar. 9, 2015) (mem. op.), ECF No. 168-1.) On appeal, the Tennessee Supreme Court found that "the issue of the constitutionality of that cap [was] not ripe for determination ...." Clark v. Cain, 479 S.W.3d 830, 832 (Tenn. 2015).

Pivnick's civil practice guide distinguishes the jury function from the function of the court, describing the jury function as thus:
A jury is a group of laymen chosen to determine questions of fact and so-called "mixed questions of law and fact," which involve the jury's application of law to the facts. It is the court, however, that determines and instructs the jury on the applicable law in all cases. The province of the jury is to weigh the evidence, pass on the credibility of witnesses, and to accept or reject testimony legally admitted in evidence by the court. The jury functions in cases in which what has happened is not agreed upon or admitted by the pleadings, and testimony is disputed and contradictory so that more than one factual conclusion can be drawn by reasonable men. Factual questions may be withdrawn from the jury and decided by the court, however, in cases where the facts are established by the evidence free from conflict, and the inferences from the facts are so certain that all reasonable men in the exercise of a free and impartial judgment must agree upon the facts. In the latter case, the court determines the action by applying the law to the undisputed facts.
Pivnick, supra page 26, § 25:1 (emphasis added).

Plaintiff relies on the Washington State Supreme Court's holding in Sofie v. Fibreboard Corp., arguing "that the right to trial by jury is not invaded if the jury is allowed to determine facts which go unheeded when the court issues its judgment [because of a statutory cap]. Such an argument pays lip service to the form of the jury, but robs the institution of its function." (Pl.'s Reply Br. at 8, ECF No. 205-2 (citing 112 Wash.2d 636, 771 P.2d 711, 721 (1989) ).).

Furthermore, Plaintiff misquotes Mallard, which refers to "a 'court's constitutional function,' " not a jury's function. (Compare Pl.'s Br. at PageID 4621, ECF No. 205-1 with 40 S.W.3d at 483 (emphasis added).)

Other states, too, have found that statutory punitive damages caps are constitutional and do not violate the separation of powers doctrine. See, e.g., Arbino, 880 N.E.2d at 443 ; Rhyne, 594 S.E.2d at 10.

1911 Tenn. Pub. Acts 29.

The Alaska Supreme Court has held that statutory damages caps "cannot violate the separation of powers, because the caps do not constitute a form of remittitur." Evans, 56 P.3d at 1055.

Although Defendant argued that no actual damages existed because Plaintiff had "received the full benefit of her bargain" by the commencement of trial (see, e.g., ECF No. 172 at 4 n.4), the Court did not disturb the jury's award of $350,000 in actual damages (see generally ECF No. 187 at 20-25).

Defendant concedes that "if the Court accepts Plaintiff's argument that she sustained $350,000 in actual damages, the Court should ... apply the cap to reduce the jury's excessive punitive award to $700,000." (ECF No. 172 at 4 n.4.)

The Court notes that the only two issues before the Court and briefed by the parties before the Tennessee Supreme Court concerned the constitutionality of the statutory punitive damages caps with respect to the right to trial by jury and the separation of powers. Other state cases have addressed statutory punitive damages caps as being void for vagueness, see, e.g., Rhyne, 594 S.E.2d at 19, or a textual constraint of legislative power, see, e.g., Bayer CropScience v. Schafer, 2011 Ark. 518, 385 S.W.3d 822, 831 (2011). Other states have also addressed the caps under theories of violations of equal protection, see, e.g., Arbino, 880 N.E.2d at 443 ; due process, see, e.g., Evans, 56 P.3d 1046 at 1055 ; takings, see, e.g., Rhyne, 594 S.E.2d at 14 ; the right of access to courts, see, e.g., id. at 18 ; and "one-subject" rules, see, e.g., Evans, 56 P.3d at 1069-70. While Plaintiff argued that the Tennessee statutory damages caps violate substantive due process (Pl.'s Br. at PageID 4618-19, ECF No. 205-1), she failed to establish first that there exists a fundamental right to a punitive damages award. Thus, because the aforementioned issues were not before the Court, the Court has not considered them in this order.